UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

| | |
|---|---|
| AUTOMOTIVE KEYS GROUP, LLC, | : |
| Plaintiff, | : |
| v. | : Case No. 1:22-cv-04930 |
| FIDEL SANCHEZ | : Judge Steven C. Seeger |
| and | : |
| ELECTRONIC ACCESS SPECIALISTS, INC. d/b/a SOUTHERN LOCK AND SUPPLY CO., | : |
| Defendants. | : |

---

### PLAINTIFF'S RESPONSE TO DEFENDANT FIDEL SANCHEZ'S 12(b)(6) MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Automotive Keys Group, LLC ("AKG") respectfully submits its response to the Motion to Dismiss filed by Defendant Fidel Sanchez ("Sanchez") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As alleged in its Amended Complaint (Dkt. No. 37, "Amended Complaint" or "Am. Compl."), AKG distributes automotive keyless entry remotes, other key replacements, and related equipment through internally developed, unique strategies and processes, which has enabled AKG to maintain a highly functioning and profitable business model. Sanchez was a leading salesperson at AKG, accounting for millions of dollars of business annually, and he had unfettered access to AKG's confidential information and trade secrets. Sanchez signed an employment agreement with AKG on October 28, 2021 (the "Employment Agreement"), which includes post-employment noncompetition obligations and a confidentiality agreement. Sanchez left AKG voluntarily and is

now working for a direct competitor of AKG, Defendant Southern Lock, in violation of the terms of the Employment Agreement and applicable law. Since the time Sanchez left AKG and began to work at Southern Lock, Southern Lock is suddenly "expanding its automotive line" in direct competition with AKG.

In response, Plaintiff filed a complaint and motion for a temporary restraining order and preliminary injunction. AKG then filed an Amended Complaint, which includes 40 pages of allegations relating Sanchez's wrongful conduct in support of five claims against Sanchez: Count I for Breach of Contract; Count II for violation of the Defend Trade Secrets Act; Count III for violation of the Illinois Trade Secrets Act; Count IV for Breach of Fiduciary Duty; and Count V for Tortious Interference with Prospective Economic Advantage.

Sanchez's motion to dismiss these claims is meritless. With Count I, Sanchez asks this Court to rely on the inapplicable Illinois Freedom to Work Act (the Employment Agreement predates the Act) and inapposite caselaw, despite allegations in the Amended Complaint that AKG met all requirements for an enforceable contract, including consideration. And despite Southern Lock's inaccurate claims to the contrary, AKG has pled irreparable harm and no adequate remedy at law. Further, in a misguided attempt to dodge AKG's statutory trade secret claims in Counts II and III, Sanchez has attached to his motion irrelevant extrinsic documents with purported hyperlinks and webpage screenshots and posts, along with other extrinsic evidence not properly considered on a Rule 12(b)(6) motion. Sanchez also fails to address AKG's allegations of breach of fiduciary duty in Count IV and tortious interference in Count V. Accordingly, the motion to dismiss should be denied.

## FACTS ALLEGED

AKG is the largest auto key supplier in North America. (Am. Compl. ¶ 4.) AKG has, for

years, made substantial efforts and financial investment to foster its relationships with suppliers and customers; and to build and implement its confidential and proprietary pricing strategies, known in totality only by AKG and compiled by AKG, by understanding the market demand and supply for certain keys and pricing those keys accordingly. (*Id.* ¶ 5.) Each of these categories is extremely valuable to AKG and such information was compiled over many years and at a significant cost to AKG. (*Id.*). For these reasons, Sanchez was asked to and did enter into the Employment Agreement. (*Id.* ¶¶ 1,10, 27-37, Exhibit ("Ex.") A.) The Employment Agreement obligates Sanchez to protect the confidential information and trade secrets of AKG. (*Id.*) It also includes post-employment obligations that prohibit Sanchez from competing against AKG, soliciting business or employees from AKG, and otherwise disparaging AKG. (*Id.*)

Sanchez had no involvement in the procurement or sale of remanufactured automotive keys until he began to work for AKG's acquired predecessor. (*Id.* ¶¶ 8, 40.) At AKG, he had dual roles as a sales representative and head of the procurement department, and as a result, he had intimate involvement with AKG's customer lists, customer contact details, customer purchasing preferences and history, product costs, vendor and/or purchasing and field procurement relationships, the prices AKG pays for used keys in the marketplace, the prices at which AKG can sell certain remanufactured keys, AKG's marketing strategies, AKG's operations processes, including integration growth plans as well as AKG's brand strategies technology to transform and program keys into sellable form in accordance with customer specifications, and AKG's efforts to further develop its business. (*Id.* at ¶¶ 49-50.) This information in its totality comprises AKG's confidential strategy that enables it to be profitable, is not publicly available and is closely guarded by AKG. Specifically, AKG protects this information by (i) limiting disclosure and use to employees that need the information to perform their jobs; (ii) restricting network access and

requiring passwords for the same; (iii) requiring all employees to execute confidentiality agreements; and (iv) requiring certain customer-facing employees to execute agreements with non-disclosure, non-compete, and non-solicitation provisions. (*Id.* ¶ 50.) Sanchez's Employment Agreement contains a confidentiality provision, along with non-compete and non-solicitation provisions. (*Id.*, Ex. A ¶¶ 4, 6.)

Evidence uncovered to date demonstrates that Sanchez has, at the behest of Southern Lock, and in direct violation of his Employment Agreement, voluntarily resigned his employment with AKG for a position with Southern Lock so that Southern Lock can establish a competing automotive key remanufacturing business, which it now touts on its website as "expanding." (*Id.* ¶ 11.) Sanchez also downloaded confidential and proprietary information of AKG to flash drive storage devices, which he has refused to return, and he solicitated and attempted to divert the business of customers of AKG to Southern Lock, as confirmed in a customer Facebook post. (*Id.* ¶ 12-13.)

Since leaving AKG, Sanchez has utilized, disclosed, and misappropriated AKG's trade secrets, confidential information, and proprietary information for the benefit of himself and Southern Lock. (*Id.* ¶ 16.) Injury to AKG is probable and imminent because Sanchez's continued possession of AKG confidential information and trade secrets without AKG's authorization or permission has caused and will cause significant harm to AKG. (*Id.* ¶ 96.) This is especially true since AKG now knows that Sanchez has retained AKG's confidential communications (as evidenced by exhibits Sanchez attached to a pleading in this case) and Southern Lock is developing a line of products that competes directly with AKG. (*Id.* ¶ 97.)

**LAW AND ARGUMENT**

**I.      Legal Standard.**

In ruling on a Rule 12(b)(6) motion, the court must take as true all well-pleaded facts in a plaintiff's complaint and draw all reasonable inferences in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 971, 977 (7th Cir. 1999). To survive a motion to dismiss, a complaint need only contain sufficient factual matter, accepted as true, to state a claim plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See id*. When adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations in the complaint. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (holding that "[i]f a court takes judicial notice of a fact whose application is in dispute, the court…raises doubt as to whether the parties received a fair hearing"). As such, if a court considers "matters outside the pleadings" on a Rule 12(b)(6) motion, the "motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).

**II.     AKG's Amended Complaint Abundantly Meets the Pleading Standard.**

      **A.      The Amended Complaint states a claim for Breach of Contract (Count I).**

The Amended Complaint states a claim in Count I based on Sanchez's multiple breaches of the terms of the Employment Agreement. AKG has pled the elements for a breach of contract claim: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *LeSaint Logistics, LLC v. Electra Bicycle Co., LLC,* 146 F. Supp. 3d 972, 977 (N.D. Ill. Nov. 19, 2015) (citing *Avila v. CitiMortgage, Inc.*, 801 F. 3d 777, 786 (7th Cir. 2015)); *see also CZS Holdings,* 2021 WL 1837385, at *4 (denying 12(b)(6) motion to dismiss where pleading plausibly set forth breaches of employment agreement's non-disclosure and non-competition obligation).

5

Here, there can be no dispute as to the existence of a contract: the Employment Agreement was executed by both Sanchez and AKG. (*See* Am. Compl., Ex. A.) The obligations in the Employment Agreement are sufficiently alleged and valid and enforceable under Illinois law. *See Coady v. Harpo, Inc.,* 308 Ill. App. 3d 153, 161 (1st Dist. 1999) (confidentiality agreements are enforceable). Sanchez's post-employment restrictive covenants were also supported by adequate consideration in the form of a payment to Sanchez and his nine months of employment. *See*, *e.g.*, *Stericycle, Inc. v. Simota*, No. 16 C 4782, 2017 WL 4742197, at *5 (N.D. Ill. Oct. 20, 2017) (finding 13 months of employment and unvested stock options to be adequate consideration); *R.J. O'Brien & Assocs., LLC v. Williamson*, No. 14 C 2715, 2016 WL 930628, at *4 (N.D. Ill. Mar. 10, 2016) (finding adequate consideration where defendant "received his commissions due under the employment agreement" as well as a "generous salary").

AKG has alleged multiple breaches of the Agreement by Sanchez. Specifically, Sanchez breached Paragraph 3 of the Employment Agreement by failing to faithfully perform his duties as an employee of AKG. (Am. Compl. ¶¶ 27-37, 54-77, Ex. A.) He breached Paragraph 4 by using AKG's confidential information and trade secrets for the benefit of himself and Southern Lock. (*Id*.) Sanchez also breached Paragraph 11 by failing to return all property of AKG, retaining copies of AKG's proprietary information, and failing to delete or destroy all residual copies of AKG's proprietary information. (Am. Compl. ¶¶ 27-37, 54-77, 91, Ex. A.)  Sanchez breached Paragraph 6 by commencing employment with Southern Lock to provide it with services competitive with those that Sanchez provided to AKG during his employment. (*Id.* ¶¶ 68, 70.) Sanchez further breached Paragraph 6 by inducing or attempting to induce customers of AKG to cease doing business with AKG in favor of Southern Lock. (*Id.* ¶ 73; *see also id.*, Ex. C.)  Sanchez also

6

breached Paragraph 7 by making disparaging statements about AKG to an AKG customer, which in turn published them on Facebook. (*Id.*)

Sanchez's contentions that AKG's breach of contract claim should be dismissed are wrong. First, he fails to address AKG's allegations that he violated contract terms requiring him to perform his job duties, fulfill his duties of loyalty, and return company property. Second, Sanchez erroneously asserts that the Illinois Freedom to Work Act somehow invalidates the noncompetition and nonsolicitation provisions in the Employment Agreement. However, the Illinois Freedom to Work Act applies only to agreements executed on or after January 1, 2022. *See* 820 ILCS 90/5, *et seq*. The law is <u>not</u> retroactive. *Id.* Sanchez executed the Employment Agreement on October 28, 2021. (Am. Compl. ¶ 27; *see id.*, Ex. A.) As such, the Illinois Freedom to Work Act has no application here. The Amended Complaint also expressly alleges consideration in the form of a monetary payment, in addition to Sanchez's nine months of continued employment, to support the restrictive covenants in the Employment Agreement. *See Guaranteed Rate, Inc. v. Wilson,* No. 20-cv-1663, 2020 WL 4736395, at *3 (N.D. Ill. Aug. 14, 2020) (finding it premature to rule on the issue of adequate consideration on a Rule 12(b)(6) motion where consideration is properly alleged). Notably, Sanchez fails to cite any authority where an alleged monetary payment and nine months of continued employment was deemed insufficient consideration under the law. The cases Sanchez does cite involve only continued employment as consideration, which is not the case here. *See, e.g., Tekway Inc. v. AT&T Services, Inc.,* 2021 WL 916080, at *4 (N.D. Ill. Mar. 10, 2021) (when continued employment was the only consideration for the subject non-compete, the court offered for plaintiff to replead allegations regarding enforceability).

Sanchez further claims that AKG has not alleged a breach of contract claim because the information and materials alleged by AKG as confidential do not meet the definition of

7

Confidential Information in the Employment Agreement. However, the Employment Agreement broadly defines "Confidential Information." (Am. Compl., Ex. A., ¶ 4.) Accordingly, AKG's allegations in this regard are more than sufficient to state a breach of contract claim under settled law. *See Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1107 (N.D. Ill. Apr. 7, 2016) (holding enforceable confidentiality agreement that broadly defined confidential information and enumerated examples of confidential information). Even if there is an ambiguity (which there is not), "interpreting the contract's meaning is a question of fact" rendering dismissal here inappropriate. *See LeSaint Logistics,* 146 F. Supp. 3d at 977 (denying 12(b)(6) motion to dismiss based upon alleged contractual ambiguity due to necessary question of fact).

Sanchez next contends that AKG has failed to plead a protectible interest, and that the terms of the agreement are overbroad. Sanchez is wrong. AKG's has adequately pled that the post-employment restrictions on competition and solicitation in the Employment Agreement are valid and enforceable under Illinois law because they are necessary to protect a legitimate business interest, specifically, AKG's confidential information and trade secrets that give it a competitive advantage in the market. (Am. Compl., ¶¶ 4-7, 9. 38-39, 42-49, 52-53, 89, 97.) In any event, whether a restrictive covenant is reasonable is a fact-based determination not appropriate at the motion to dismiss stage. *Maximum Indep. Brokerage, LLC v. Smith*, 218 F. Supp. 3d 630, 637 (N.D. Ill. 2016) (denying former employees' 12(b)(6) motion to dismiss and holding that nonsolicitation clause in employment agreement that had no geographic limitation and contained two-year restriction was not patently unreasonable). The mere fact that AKG has alleged that it has a legitimate business interest is, alone, sufficient to deny Sanchez's request for dismissal. *See Nortek Prod. (Taicang) Ltd. v. FNA Grp., Inc.*, No. 10 C 2813, 2011 WL 2110043, at *4 (N.D. Ill. May 24, 2011) (finding that [the employer] has alleged a legitimate

8

business interest that serves as a valid basis for stating a claim for breach of the restrictive covenants.").

The cases cited by Sanchez in support of his erroneous proposition are also inapposite. Unlike here, the restrictive covenants in those cases were deemed overbroad because they would prevent an employee from working for a competitor in *any* capacity, and because the agreement in question did not have a severability clause. *See Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694 (N.D. Ill. 2014). Here, unlike *Montel,* the Employment Agreement prohibits Sanchez from performing the same services for a competitor that he does for AKG. (Am. Compl. ¶ 32; *see id.*, Ex. A. ¶ 6.) It also contains a severability clause. (*Id.* ¶ 13(A).)

Sanchez further claims, without legal authority, that there is no breach of contract claim because AKG has not provided "proof" of disparagement. AKG is not required to "prove" disparagement at the pleading stage; it has alleged that customers are convinced that Southern Lock, as opposed to AKG, "will be exactly what the industry needs;" showing that Sanchez has painted AKG in a bad light. (Am. Compl. ¶¶ 72-73; *see id.*, Ex. C.) These allegations are more than sufficient to put Sanchez on notice of AKG's breach of contract claim. *See Nortridge v. Columbia Health Facilities-Park Regency, LLC*, No. 19 C 50253, 2020 WL 1904092, at *2 (N.D. Ill. Apr. 18, 2020) (". . . at the motion to dismiss stage, [plaintiff] is not required to prove anything."); *Carlson v CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("[E]vidence is not required at the pleading stage.").

Finally, Sanchez makes the unsupported assertion that AKG's breach of contract claim should fail because AKG does not allege facts to show that Sanchez is the cause of any losses and/or AKG has not shown that it lacks an adequate remedy at law. But AKG has expressly pled that it lacks an adequate remedy at law. (*Id.* ¶¶ 100-101.) Moreover, AKG's allegations of

Sanchez's breaches of contract are sufficient to show irreparable harm and no adequate remedy at law. *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 715 (N.D. Ill. 2009) (disclosure of confidential information and trade secrets is irreparable harm under Illinois law). Specifically, AKG alleges that Sanchez has disclosed AKG's confidential information and trade secrets to Southern Lock, and he has begun competing against AKG on behalf of Southern Lock in direct violation of his Employment Agreement. (Am. Compl., *see e.g.*, ¶¶ 16, 64-77.) His conduct will result in the loss of AKG's "goodwill, competitive position, and continuity of business relationships with its customers and employees." *See Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools, Inc.*, 420 F.Supp.2d 866, 872 (N.D. Ill. 2006) ("Such harm is oftentimes fatal to businesses, and cannot be readily calculated and cured by an award of monetary damages").

Sanchez's citation to *Aon Risk Servs. Companies, Inc. v. Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843 (N.D. Ill. 2019), in support of his contention that AKG has failed to allege it lacks an adequate remedy at law is misplaced. In *Aon*, the Court granted Aon's request for a TRO in an action brought against its former employees and competitor for misappropriation of trade secrets, in light of potentially "unquantifiable losses" including "the loss of Aon's competitive position in the industry." *Id.* at 852. The same is true here, and the motion to dismiss should be denied.

### B. The Amended Complaint properly alleges claims under the Defend Trade Secrets Act (Count II) and the Illinois Trade Secrets Act (Count III).

The Amended Complaint properly alleges claims under the Defend Trade Secrets Act (Count II) and the Illinois Trade Secrets Act (Count III). For claims under both statutes, a plaintiff meets the pleading standard if it alleges the existence of a trade secret and that it was used, disclosed, or otherwise misappropriated by a defendant. *CZS Holdings LLC v. Kolbe,* No. 20-cv-6886, 2021 WL 1837385, at *3 (N.D. Ill. May 7, 2021) (denying motion to dismiss

10

misappropriation claims); *Fire 'Em Up, Inc. v. Technocarb Equipment (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011) (declining to dismiss a complaint alleging trade-secret protection for information including customer lists, supplier lists, product specifications, and marketing plans). Further, courts have held that confidentiality or non-disclosure agreements are considered efforts sufficient to maintain the secrecy of a trade secret. *See Dick Corp. v. SNC-Lavalin Constructors, Inc.*, No. 04 C 1043, 2004 WL 2967556, *10 (N.D. Ill. Nov. 24, 2004).

Here, AKG's Amended Complaint details at length its trade secrets and the efforts that AKG takes to protect the secrecy of its trade secrets, such as access limitations, confidentiality and non-disclosure agreements, and password-protected networks and devices. (*See* Am. Compl. ¶¶ 4-7, 9, 13-16, 24-26, 38-53, 66-68, 70, 96-101.) Sanchez, however, contends that these efforts were insufficient because AKG does not have its customers or suppliers sign confidentiality agreements. However, AKG has pled that no single customer or supplier (or any other third party) has knowledge of AKG's trade secrets, including, but not limited to, the compilation of information specified above and internal strategies. (*Id.*) AKG's Amended Complaint also alleges acts of misappropriation by Defendants, including evidence that Sanchez is in possession of AKG's confidential information, which he has failed to return to AKG. (*Id.* ¶¶ 66-72.) Sanchez's only response is that AKG should have "sought a protective order." But this has nothing to do with whether or not AKG has pled a claim in its Amended Complaint.

Sanchez next improperly claims that Counts II and III should fail based on extrinsic evidence haphazardly attached to his motion, consisting of 64 pages of purported Google search results and links to webpages and images from screenshots of non-governmental websites. He also makes inaccurate inferences regarding an affidavit not attached to the Amended Complaint. These documents are not properly considered on a Rule 12(b)(6) motion. A court must exclude any

11

extrinsic documents attached to a motion to dismiss made under Rule 12(b)(6), subject to narrow exceptions. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir.1998). To be considered in a 12(b)(6) motion, extrinsic documents must be "(1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim;" a court may take judicial notice of matters of the public record only when the facts at issue are "not subject to reasonable dispute." *Gen. Elec.*, 128 F.3d at 1080-81 (quoting Fed. R. Evid. 201(b)) (holding that the district court erred in taking judicial notice of a tangential settlement and noting "[i]f a court takes judicial notice of a fact whose application is in dispute, the court removes these weapons from the parties and raises doubt as to whether the parties received a fair hearing."). As their factual and legal significance is both unclear and a matter of dispute, the Court should disregard the exhibits. *See Daugherty v. University of Chicago*, 2017 WL 4227942, at *5 (N.D. Ill. Sept. 22, 2017) (declining to consider extrinsic exhibits where the court could not determine at such early pleading stage that the purported information was indisputable). Private webpages from varying corners of the internet will not meet do not meet the standard for judicial notice. *See Fooey Inc. v. Gap, Inc.*, 2013 WL 2237515, at *2, n.2 (N.D. Ill. May 17, 2013) (declining to take notice of Google search results and noting many other courts have similarly declined, as Google search results are not capable of accurate and ready determination). Further, in *Rowe v. Gibson*, 798 F.3d 622, 628 (7th Cir. 2015), cited by Sanchez, the court actually notes that district courts should make sparing use of judicial notice, and that judicial notice is appropriate for web searches only when the facts from the webpage are indisputable and capable of determination as to relevance, such as the time "when it became dark on a specific night."

    Here, the webpages and communications should be disregarded because they are not capable of being authenticated (and thus subject to dispute) and are not referenced in the Amended

12

Complaint. Sanchez would have the Court parse through these pages to somehow determine relevance, which is simply improper on a 12(b)(6) motion. Further, the Amended Complaint explicitly alleges that AKG has proof that Sanchez is in possession of confidential customer information because he has attached it to his own declaration in opposition to AKG's request for injunctive relief, *see* Dkt No. 13-1, at Exhibit 4. (Am. Compl. ¶ 67.) If the Court does not disregard the improper exhibits, it must convert Sanchez's motion to dismiss into a motion for summary judgment, allowing for discovery. Fed. R. Civ. P. 12(d).

Finally, Sanchez does not cite a single case that would substantiate the notion that AKG's trade secret claims do not meet the pleading standards. Indeed, the decisions Sanchez relies on directly contradicts his position. *See Life Spine, Inc. v. Aegis Spine, Inc.,* 8 F.4th 531, 535 (7th Cir. 2021) (affirming decision granting preliminary injunction after nine-day hearing resulting in finding that information *was not* in public domain); *see also Mangren Research and Dev. Corp. v. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 942 (7th Cir. 1996) (affirming jury's verdict finding plaintiff established trade secrets *were not* in public domain); Others were not decided on a Rule 12(b)(6) motion and involved an evaluation of the evidence. *See Abrasic 90 Inc. v. Weldcote Metals, Inc.,* 364 F. Supp. 3d 888, 895 (N.D. Ill. Mar. 4, 2019) (decided on a motion for preliminary injunction after multiple days of evidentiary hearing); *Idx Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (applying *Wisconsin* law and granting summary judgment on Wisconsin state law misappropriation claim); *Multimedia Sales & Mktg. v. Marzullo*, 2020 IL App. (1st) 191790, at ¶ 2 (1st Dist. 2020) (granting summary judgment after parties engaged in discovery and developed evidence); *Cortez, Inc. v. Doheny Enterprises, Inc.*, 2017 WL 2958071, at *10 (N.D. Ill. July 11, 2017) (decided on a motion for a preliminary injunction).

The *Life Spine* decision is particularly telling, holding that "[a] trade secret can even exist 'in a combination of characteristics and components, each of which, by itself, is in the public domain,' so long as their 'unique combination' has competitive value." *Id.* at 540-41 (citing *3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001)). This is precisely what AKG alleges in the Amended Complaint: AKG customers are privy only to the prices offered to them to purchase AKG products. They have no knowledge of the compilation of information and data used to calculate these prices or what other customers in the market might be quoted for AKG products. They also have no knowledge of how AKG and Midwest Keyless developed high-level profitability models for their products and services in a very tight market. (*See* Am. Compl. ¶ 52.) Thus, Sanchez's motion to dismiss Counts II and III should be denied.

      C.      **The Amended Complaint states a claim for Breach of Fiduciary Duty (Count IV) Tortious Interference with Prospective Economic Advantage (Count V).**

AKG's Amended Complaint has sufficiently stated a claim for breach of fiduciary duty by alleging that Sanchez owed and owes fiduciary duties to AKG (Am. Compl. ¶ 150; *see id.*, Ex. A, ¶ 3), that he conspired with Southern Lock to breach his Employment Agreement and to misappropriate confidential information and trade secrets (*Id.* ¶¶ 153-54), and that these breaches of fiduciary duty caused injuries to AKG (*Id.* ¶¶ 155-57); *See Cary v. Northeast Ill. Reg'l Commuter R.R. Corp.,* No. 1:19-cv-03014, 2021 WL 6091750, at *2 (N.D. Ill. Dec. 23, 2021) (denying 12(b)(6) motion to dismiss breach of fiduciary duty claim).

AKG's Amended Complaint also sufficiently alleges tortious interference with prospective economic advantage, alleging that AKG had a reasonable expectancy of a valid business relationship with its customers, that Sanchez was aware of AKG's expectancy of business relationships with its customers, and that Sanchez intentionally interfered with AKG's relationships with customers. (*Id.* ¶¶ 70-74, 159-62); *see 20/20 Foresight, Inc. v. George,* No. 20-

14

cv-5310, 2021 WL 2823095, at *4 (N.D. Ill. July 7, 2021). Sanchez does not deny that AKG has set forth allegations in support of Counts IV and V. Thus, Sanchez's motion to dismiss these claims should be denied.

## CONCLUSION

For the foregoing reasons, this Court should deny Sanchez's motion to dismiss AKG's Amended Complaint. In the alternative, should this Court consider Sanchez's extrinsic evidence, AKG respectfully requests that the Court convert Sanchez's motion to dismiss into a motion for summary judgment and allow the parties to engage in discovery prior to any ruling.

Dated: December 16, 2022

Respectfully submitted,

*/s/ Margo Wolf O'Donnell*
Margo Wolf O'Donnell (6225758)
Emily Newhouse Dillingham (6290333)
**BENESCH, FRIEDLANDER,
 COPLAN & ARONOFF LLP**
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606-2211
P: 312.212.4982, F: 312.767.9192

*Attorneys for Plaintiff Automotive Keys Group, LLC*

15

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, does hereby certify that they caused a true and correct copy of the foregoing **Response to Defendant Fidel Sanchez's 12(b)(6) Motion to Dismiss First Amended Complaint** to be served upon all parties by electronic mail and this Court's ECF system, this 16th day of December 2022.

                                                       */s/ Margo Wolf O'Donnell*