**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| AUTOMOTIVE KEYS GROUP, LLC, ) <br> ) <br>   Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FIDEL SANCHEZ and ELECTRONIC ACCESS ) <br> SPECIALISTS, INC., doing business as ) <br> SOUTHERN LOCK AND SUPPLY CO., ) <br> ) <br>   Defendants. ) | Case No. 1:22-cv-04930 <br><br> Hon. Judge Steven C. Seeger |

**DEFENDANTS' FRCP 12(b)(6) MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

**I.   Introduction**

Plaintiff's Second Amended Complaint ("SAC") suffers from a malady all too common in these kinds of cases: the plaintiff broadly asserts, without any factual support, that essentially *all* information about its business is a trade secret.  Even now, with a third bite at the apple, Plaintiff Automotive Keys Group, LLC ("AKG") still cannot put forward a plausible claim for misappropriation of trade secrets or breach of confidentiality, the centerpieces of its lawsuit. AKG's claims that Sanchez breached his AKG Employment Agreement (the "Agreement") fare no better; they are premised on rank speculation, and are quite simply devoid of any colorable facts.  Even beyond these fatal flaws, the Agreement's noncompetition and customer non-solicitation provisions are void on their face for inadequacy of consideration.

With respect to the trade secret claims, AKG's vague and conclusory recitations of the elements are insufficient as a matter of law.  Its generalized descriptions of trade secrets are "mere labels and conclusions." Further, simple searches of the Internet show that what the SAC identifies as AKG's most valuable trade secrets are not a secret at all.  The Court may take judicial notice of these searches, which are not technical and use obvious search terms.  AKG's trade secret and

confidential information claims also lack any facts establishing that Sanchez used, copied, or otherwise disclosed any of AKG's information.

As to the claimed employee non-solicitation breaches, the SAC does not allege even a single fact about how the named and unnamed former AKG employees came to work for Sanchez's new employer, Southern Lock. AKG pleads itself out of the non-disparagement claim by quoting, on its own, customer dissatisfaction and praise of Sanchez. And there are no facts linking customer criticism to Sanchez. Both of these claims make unsupported assumptions and require leaps of logic the Court should not have to make.

Lastly, as a matter of well-settled Illinois law, the restrictive covenants in the Agreement are void and invalid for lack of consideration. Sanchez, an at-will employee, was employed for less than two years from the Agreement's signing, rendering any "continued employment" insufficient under Illinois law. AKG's paltry "payment" to Sanchez does not salvage the Agreement from *Fifield's* application. Such an insignificant payment does not justify such expansive post-employment restrictions. And, where there is no valid contract at issue, AKG's tortious interference claims relying on the Agreement equally fail.

In the end, AKG has simply failed to meet its pleading burden under *Twombly* and "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" under *Ashcroft v. Iqbal*, 556 U.S. 662, 678-9 (2009). The SAC should be dismissed in its entirety.

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). By focusing on "plausibility," *Twombly* clarified that pleading mere conclusions is insufficient to warrant putting a defendant through the rigor and

expense of federal court litigation. *Id.* at 555.

Rather, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, at 556 U.S. at 678-9. But where, as here, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (internal citations omitted).[1]

**III.    Counts I Through V Must Be Dismissed for Failure to State a Claim.**

      **A. The SAC Fails to Allege Any Facts Plausibly Showing the Existence of Protectible Trade Secrets.**

Far from establishing the elements required for claims under the Illinois Trade Secrets Act (Count III) and the federal Defend Trade Secrets Act (Count II), AKG fails to even establish the threshold issue that trade secrets exist. As the Court well knows, the Illinois Trade Secrets Act ("ITSA") and the federal Defend Trade Secrets Act ("DTSA") define "trade secret" in substantially the same manner. *See NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 1:17-cv-8829, 2020 WL 2836778, at *3 (N.D. Ill. May 31, 2020) (Seeger, J.). The ITSA defines a "trade secret" as "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list

---

[1] In reviewing this motion, the Court may consider not only the allegations of the complaint, but also matters about which a court may take judicial notice, without converting the motion into one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). Facts readily ascertainable from an Internet search are among the matters of which a court may take judicial notice, especially if the fact to be judicially noticed is not one that requires determination by the factfinder through an adversary procedure. *See Rowe v. Gibson*, 798 F.3d 622, 628 (7th Cir. 2015).

of actual or potential customers or suppliers, that: (1) is sufficiently *secret* to derive *economic value*, actual or potential, *from not being generally known to other persons who can obtain economic value* from its disclosure or use; and (2) is the *subject of efforts that are reasonable under the circumstances to maintain its secrecy* or confidentiality." 765 ILCS 1065/2(d) (emphasis added). For its part, the DTSA defines it as: "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information…." 18 U.S.C. § 1839(3).

Here, for the third time in a row, AKG has failed to identify any specific information which is purportedly secret. It relies on mere labels and generalized categories of "technology" and customer, vendor or supplier "information," all of which lack any specificity or particularity. The SAC's attempts to cure the defects of the prior pleadings tell the tale. For example, the SAC now states at ¶ 4:

> "The most profitable and prevalent part of AKG's business is its ability to continually acquire used keys from a network of suppliers that it and its acquired predecessor, Midwest Keyless, Inc. ("Midwest Keyless"), built out over many years. AKG remanufactures those keys using technology and equipment purchased from specific vendors, and then sells these remanufactured keys for varying profit margins to a host of large-scale locksmiths and other purchasers through equally long-fostered market relationships."

But deflecting with buzz phrases like "built over many years" and "long-fostered market relationships" does nothing to identify the true secret. They're still nothing but labels. *See NEXT Payment Sols., Inc.*, 2020 WL 2836778 at *13 (granting summary judgement against NEXT on trade secret issue, stating, "NEXT clings to generalities. It describes what its alleged trade secrets

do, not what they are. NEXT took generalities and doused them with a heavy sprinkling of action verbs.").[2]

The same is true here. Doubling down on its parade of general categories, SAC Paragraph 47 similarly goes on to claim the identities of suppliers of used keys, identities of customers, wholesale and retail pricing, and which keys are in highest demand are trade secrets. (SAC, ¶ 47). However, a cursory search of the Internet shows that these purported "trade secrets" are public information. Attached hereto as **Group Exh. 1** are Google search results, showing results from just two of the search terms used by Sanchez's counsel within the space of just a few hours, producing not only the names of specific suppliers, but also specific prices being quoted for different types of keyless entry devices. Meanwhile, **Exh. 2** is an Internet article located in one of counsel's searches, identifying auto recyclers as a leading source for used key fobs; **Group Exh. 3** shows that even in just the Chicago area, such recyclers can also be found in abundance via the Internet. Similarly, members of the only customer group specifically identified by the SAC itself – locksmiths – are also easily found aplenty thru an Internet search (*see* **Group Exh. 4**).

Information that is so readily ascertainable cannot be a trade secret. *See NEXT Payment Sols., Inc.*, 2020 WL 2836778 at *12 (internal citations and quotations omitted) (granting summary judgement on trade secret claim where "many of the items that appear in this description are exceedingly hard to call trade secrets: things that any user or passer-by sees at a glance are 'readily ascertainable by proper means'").

---

[2] Defendants acknowledge that *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 2020 WL 2836778 (N.D. Ill. May 31, 2020) (Seeger, J.) was decided on a different procedural posture than the one at bar, but the SAC's categories and lack of details resemble the generalities used in the more fulsome summary judgment record in *NEXT Payment*. Because Plaintiff is bound by the detail (or lack thereof) in the SAC, *NEXT Payment*'s application of similar generalizations is illustrative for this motion to dismiss.

These searches also establish that pricing is basically an ongoing auction between suppliers and interested buyers that changes daily, if not hourly. No static pricing knowledge has any enduring value. *See Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F.Supp.3d 888, 903 (N.D. Ill. 2019) (stating that "information becomes increasingly stale and less valuable as market conditions, prices, and profit margins change and industry relationships evolve.").

Further, while the SAC implausibly claims that the foregoing information is not "publicly available" (e.g., ¶¶ 46-47) it alleges no facts that AKG or its acquired companies took any action to develop such information, let alone any steps taking "considerable time, effort, or expense." Neither does it allege that such information cannot be easily and quickly learned or duplicated by one motivated to do so. As a matter of law, these are not trade secrets. *See, e.g.*, *Cortez, Inc. v. Doheny Enterprises, Inc.*, 2017 WL 2958071, at *10 (N.D. Ill. July 11, 2017) ("Where information can be readily duplicated without involving considerable time, effort or expense, it is not a trade secret"); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 540 (7th Cir. 2021) (stating "[i]nformation that is public knowledge or that is generally known in an industry cannot be a trade secret"); *Mangren Research and Development Corp. v. National Chemical Co., Inc.*, 87 F.3d 937, 942 (7th Cir. 1996) (the ITSA "precludes trade secret protection for information generally known within an industry even if not to the public at large").

Indeed, what the SAC *does* allege virtually pleads AKG out of court. It states, in ¶ 45:

> "Many, if not all, of the automotive key buying contracts that Sanchez procured were done while he was employed by Midwest Keyless and, later, AKG. These contracts were most often the product of introductions made at trade shows that Sanchez attended by virtue of his position with Midwest Keyless/AKG, introductions from locksmith customers of Midwest Keyless/AKG, or introductions from the Midwest Keyless/AKG management team."

Anything learned at trade shows was clearly available to the interested public, and not a trade secret. Information divulged by or learned from customers is equally "non-secret," and the SAC

does not allege AKG customers were prohibited by contract from divulging such information.

As for the allegation that some information about suppliers was learned through introductions from Plaintiff's management team, the SAC neither quantifies nor gives any examples (under seal or otherwise) of any such introductions. And the relationships made while doing the job, without specific facts showing special efforts by the employer to develop them in the first instance, are not trade secrets. *See Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 795 (1st Dist. 2002).

If there are any other "practices" or "supply chain knowledge" (SAC, ¶ 47), "logistics process" (*Id.* ¶ 47(c)), or "refurbishing processes[es]" (*Id.* ¶ 46) that AKG considers a trade secret, these terms are too vague to describe such alleged trade secrets with the particularity needed for evaluation and enforcement of a claim for supposed misappropriation. *See NEXT Payment Sols., Inc.*, 2020 WL 2836778 at *15 (internal quotations omitted) (*quoting IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002)) (plaintiff must identify alleged trade secrets with an appropriate level of specificity and "invit[ing] the court to hunt through the details in search of items meeting the statutory definition" is insufficient); *IDX Systems Corp.* at 285 F.3d at 583-4 (affirming dismissal of trade secret claims where the plaintiff failed to describe its trade secrets with enough particularity to qualify as trade secrets).

Meanwhile, attached as **Exh. 5** are numerous sources for unlocking services and publicly available processes via Internet (including video demonstrations) for unlocking, resetting, renewing, and programming entry devices used with various brands of vehicles. It's all there for the taking. The Court may take judicial notice of these facts. *See Tellabs*, 551 U.S. at 322.

The SAC also fails to show that AKG takes reasonable measures to protect the information it now claims are trade secrets. In this regard, while the SAC alleges that employees sign

confidentiality agreements (SAC, ¶ 134), it does *not* allege that *customers* are required to sign confidentiality agreements. When customers are free to disclose pricing, preferences, business volume, or other information pertaining to the customer, there is no trade secret status. For example, in *Abrasic 90 Inc. v. Weldcote Metals, Inc*., the court stated: "Pricing information shared freely with customers without confidentiality requirements is insufficiently secret to garner protection." 364 F.Supp.3d at 898. The court also observed that information can be "of minimal marginal value to the defendants relative to the information they already possess through their extensive experience in the industry or could obtain through other sources." *Id*. at 903. And, information which is "many months old [] becomes increasingly stale and less valuable as market conditions, prices, and profit margins change and industry relationships evolve." *Id*.

In this respect, *Multimedia Sales & Marketing, Inc. v. Marzullo*, is also instructive. 2020 IL App (1st) 191790, at ¶ 26. There, the court addressed a trade secret dispute concerning sales of radio airtime for public service announcements or "PSAs." The court observed:

> "[O]nce a competitor hears a PSA from one of MSM's customers or otherwise receives the name of an MSM customer from the radio station, it can contact the customer and acquire whatever information the customer is willing to provide. In short, once the customer's name is known, the other 'important information' MSM says is secret is easily ascertainable and so not secret information under the Act."

*Id*. at ¶ 26.

Similarly, "[p]ricing information given to a customer that the customer is at liberty to divulge is not a trade secret." *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands International Inc.,* 616 F. Supp. 2d 805, 820 (N.D. Ill. 2009). Further, where (as here) the employee is engaged in procuring or selling goods rather than services, "the element of trust is attenuated," and Illinois law "does not permit the seller to claim a protectable interest in his relations with his customers." *Curtis 1000 v. Suess,* 24 F. 3d 941, 948 (7th Cir.1994)*.*

There is also no allegation in this case that *suppliers* are required to sign confidentiality agreements, and for reasons analogous to those stated in the preceding paragraph, their identities, pricing, and transactions cannot be trade secrets, either.

Put simply, AKG makes a sweeping conclusion that essentially all information about its business is a trade secret. This bare, generalized conclusion renders its pleading implausible and subject to dismissal. In *IDX Systems Corp. v. Epic Systems Corp.*, a case with similar allegations, the court observed the plaintiff "has been both too vague and too inclusive, [by] effectively asserting that all information" about its product or operation is a trade secret. 285 F.3d at 583-4. The court stated:

> "That's not plausible – and, more to the point, such a broad assertion does not match up to the statutory definition. Reluctance to be specific is understandable; the more precise the claim, the more a party does to tip off a business rival to where the real secrets lie and where the rival's own development efforts should be focused. Still, tools such as protective orders are available to make this process less risky, and unless the plaintiff engages in a serious effort to pin down the secrets a court cannot do its job."

*Id*. Here, Plaintiff has three times made no serious effort to pin down the alleged secrets. Counts II (violation of the federal trade secret statute) and III (misappropriation under the Illinois statute) must be dismissed for failing to allege "more than a sheer possibility" of the existence of trade secrets in the first place, rendering them insufficient under *Iqbal* and *Twombly*.

### B. The SAC Alleges No Facts to Show Copying or Use of Alleged Trade Secret Information.

Contrary to documents AKG attached to other pleadings in this case, the SAC wrongly asserts Sanchez copied certain unspecified AKG trade secrets and confidential information on flash drives according to a forensic analysis. (SAC, ¶¶ 93-94). The actual results of the analysis tell a different tale and are ignored in the SAC. AKG cannot hide from the actual language in the

Reisman Declaration, which it drafted, attached here as **Exh. 6**.[3]

The Reisman Declaration states that a flash drive was attached to the AKG laptop computer assigned to Sanchez on seven (7) occasions during a 7-month period preceding his August 5, 2022 resignation. (Exh. 6, ¶¶ 4, 6); SAC, ¶ 70). Reisman does *not* claim any documents were saved to the flash drive; rather, he suggests the documents were saved to the hard drive of the very laptop that Sanchez left behind at AKG. (Exh. 6, ¶¶ 8-10). Reisman claims that Sanchez connected an iPhone on 8/1/22, but does not state any information was copied to the iPhone. (Exh. 6, ¶ 7). None of this establishes that "Sanchez copied certain unspecified AKG trade secrets and confidential information on flash drives." Sanchez's alleged use of flash drives with his AKG computer during the last seven months he was working for AKG – the final time almost a full month before he resigned – is consistent with simply doing his job for AKG. Not one fact suggests Sanchez took or used the information.

AKG points to a single communication at Exh. 4 to Dckt. 13-1 – a photo taken by Sanchez of a computer screen where the only visible window is a frustration memo he sent to his boss – and concludes this shows Sanchez possesses "multiple pages of confidential information belonging to AKG." (SAC, ¶ 100). This isolated picture implies no such wholesale copying, and the image in question – like Exh. C to AKG's own SAC – merely recites a customer experience which, as discussed above, cannot be confidential. No facts are alleged showing this photo was used by Sanchez except to defend himself against claims he left AKG out of greed rather than frustration.

---

[3] AKG attached the Reisman Declaration to its Memorandum in support of its Motion for Temporary Restraining Order and Preliminary Injunction [Dckt. 5]. "[T]he incorporation-by-reference doctrine provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F. 3d 687, 690 (7th Cir. 2012). "The doctrine prevents a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Id*. (internal citation omitted).

(SAC, ¶ 66).

### C. The SAC Fails to Allege a Breach of The Confidentiality Provision of the Agreement.

The SAC fares no better in establishing any at-issue information is even confidential under the Agreement. Equally as problematic for AKG, there are no facts establishing Sanchez breached this provision of the Agreement. Count I fails as a result.

The Agreement defines confidential information as "any sensitive or proprietary information relating to the business or affairs of Employer (whether marked "confidential" or not), including, but not limited to, any vendor, customer or investor names, telephone numbers, email addresses and other personal information; information relating to financial statements, development analysis, business plans, forecasts, purchasing plans, customer or investor identities, equipment, programs, strategies and information, analyses, profit margins or other proprietary information used by Employer in connection with its businesses. (SAC, Exh. A, p. 2, § 4). But the confidentiality provision also contains a significant caveat: Confidential Information shall not include any information which was known by Employee prior to his/her Employment with Employer, *or is in the public domain or becomes known in the industry through no wrongful act on the part of Employee*." (*Id*.) (emphasis added).

This caveat, like the "public information" exception to any trade secret definition, is fatal to AKG's breach of contract claim. As discussed above, the information at issue is *not* confidential or secret. AKG cannot simply label information "confidential" after-the-fact when it is easily ascertainable in the public domain, on the Internet, or from AKG's customers or suppliers themselves. Without facts showing that any of the information at issue is actually confidential, or that Sanchez actually disclosed this information, AKG's breach of contract claim fails.

AKG also fails to set forth any facts, aside from conclusory assertions, that Sanchez has

damaged AKG in any tangible way. AKG's claim of "damages" is beyond speculative, further defeating AKG's breach of contract claims against Sanchez. *See Vacuum Industrial Pollution, Inc. v. Union Oil Co.*, 764 F. Supp. 507, 511 (N.D. Ill. 1991) (granting motion to dismiss on breach of contract claim, stating that "speculative" and "uncertain" damages cannot be recovered.).

### D. Because AKG Cannot Establish a Trade Secrets or Confidential Information Claim, Counts IV and V Also Fail.

AKG's pleading deficiencies in Counts II and III extend to Count IV (breach of fiduciary duty relating to use of trade secrets) and Count V (tortious interference with prospective advantage by misusing trade secrets or confidential information). These claims fail on two fronts: (1) failure to establish the existence of trade secret or confidential information; and (2) failure to allege any facts showing Sanchez improperly used or disclosed such information.

As discussed above, AKG pleads itself out of any trade secret or confidential information claim, ultimately dooming Counts IV and V as well. *See infra; see also Abbott Lab. v. Chiron Corp.*, No. 97 C 0519, 1997 WL 208369, at *3 (N.D. Ill. Apr. 23, 1997) (dismissing trade secret claim where complaint merely recited the elements of a trade secret and failed to show any misappropriation beyond expressed fear that the alleged trade secret *would* be misappropriated); *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1069 (N.D. Ill. Jan 3, 2020) (dismissing trade secret claim where plaintiff failed to show trade secrets were misappropriated).

### E. The Agreement is Void and Unenforceable On Its Face.

AKG's threadbare allegations reveal AKG's real objective: to unlawfully restrain employee mobility by attempting to enforce restrictive covenants that are void as a matter of law. Specifically, the Agreement, governed by Illinois law, states that Sanchez's employment was always "at will" and terminable by AKG "with or without cause at any time." (SAC, ¶ 10, Exh. A, p. 6). Sanchez signed the Agreement on October 28, 2021, less than a year before his departure.

(SAC, ¶ 10). As a transparent token to try to evade Illinois law, AKG gave Sanchez, who was highly compensated as "a very successful salesperson" (SAC, ¶ 29), a nominal and insignificant monetary payment of $500.00 in exchange for signing the Agreement. (SAC, ¶¶ 10, 29, Exh. A, p. 7). However, the Agreement acknowledges that the consideration was actually the entirety of "the agreements, undertakings and obligations of Employer contained in this Agreement," including Sanchez's further employment and the associated compensation for an indefinite period.

Under Illinois law, the Agreement is void from its inception for lack of consideration. As the Court is well aware, in *Fifield v. Premier Dealer Services, Inc.*, the court struck down noncompetition and non-solicitation agreements, holding that continuation of employment at will is insufficient consideration for post-employment restrictive covenants unless such employment lasts for at least two (2) years after the parties enter into the agreement. 2013 IL App (1st) 120327, ¶ 19. Further, the *Fifield* court stated, "[t]his rule is maintained even if the employee resigns on his own instead of being terminated." *Id.*; *see, also, Tekway Inc. v. AT&T Services, Inc.*, 2021 WL 916080, at *4 (N.D. Ill. 2021) (dismissing tortious interference claims where underlying non-competes failed for lack of consideration under *Fifield*'s 2-year rule). As for the mere $500.00 AKG gave Sanchez in exchange for signing the Agreement, such a paltry payment cannot possibly support a twenty-four (24) month non-compete which bars Sanchez from working for an AKG competitor. As a result, the Agreement is not supported by adequate consideration and void from its inception.

The Agreement is also void as against public policy. AKG's August 8, 2022 letter to Sanchez paraphrases the Agreement as barring Sanchez broadly from doing work of any sort for (2) years anywhere in the United States for any competitor of AKG. (SAC, Exh. D). This establishes that AKG's and the Agreement's intent is nakedly anticompetitive. Where a restrictive

covenant's purpose and its implementation is to unduly restrain trade, it is "regarded as a violation of a clear public policy" and "entirely void." *See* Restatement (Second) of Torts, § 774.

AKG has offered no evidence to show that the relief it seeks is necessary to defend any protectible interest, and "[a] court should refuse to modify an unreasonable restrictive covenant 'where the degree of unreasonableness renders it unfair.'" *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 718 (N.D. Ill. 2014) (citing *Eichmann v. National Hospital and Health Care Services, Inc.*, 308 Ill. App. 3d 337, 346-7 (1st Dist. 1999)). And, because the Agreement is void on its face, it cannot serve as the basis for a tortious interference with contract claim as against Southern Lock. Count VI must be dismissed on these grounds. *See Trombetta v. Bd. of Educ.*, No. 02 C 5895, 2003 WL 1193337, at *3 (N.D. Ill. Mar. 17, 2003) (dismissing tortious interference claim because contract in question was not valid).

### F. AKG Does Not Allege Facts Showing Sanchez Solicited any AKG Employees or Disparaged AKG.

The SAC is equally devoid of any colorable facts suggesting Sanchez actually breached the Agreement. There are no facts that Sanchez solicited any AKG employee or "disparaged" AKG. The claims of breach are premised on the slimmest of reeds and would require the Court to make significant inferential leaps.

First, as it relates to Sanchez's "recruitment" of John Nelson, the SAC lack a single fact regarding such recruitment, including when or how Sanchez allegedly recruited Nelson. Instead, the SAC speculates and baldly concludes that since Nelson and Sanchez both work at Southern Lock, Sanchez must have recruited him. (SAC, ¶¶ 17-19, 102-104, 124, 165). This is simply not enough to allege a plausible claim under *Iqbal* and *Twombly*. AKG needs more than an unsupported factual inference to ask the Court to connect these dots.

As it relates to Sanchez's alleged breach of the Agreement's non-disparagement clause,

AKG appears to rely on its Exhibit C to plead this claim. Exhibit C to the SAC is a customer's posting on an industry Facebook site criticizing AKG and encouraging others to follow Sanchez.[4] But these are the customer's words, not Sanchez's. This exhibit takes AKG right out of Court on this claim. Without a single piece of factual support, AKG claims "Sanchez made disparaging comments to an AKG customer," which the customer then posted on Facebook. (SAC, ¶ 125). That's it. Nothing in this post, or otherwise in the SAC, attributes any of the post's content to Sanchez, let alone establishes Sanchez made any comments to this customer. AKG relies on nothing more than naked conclusions, which cannot sustain a breach of contract claim.

## IV. Conclusion

For the foregoing reasons, Defendants request the Court dismiss Plaintiff's Second Amended Complaint in its entirety, with prejudice, and award all other relief as is just.

Dated: April 17, 2023

| | |
|---|---|
| Gregg I. Minkow (Atty No. 6181058)<br>Minkow & Bergman, LLC<br>161 N. Clark Street, Suite 1600<br>Chicago, IL 60601<br>Phone: (847) 489-6999<br>Email: gminkow@minkowbergman.com<br><br>Kevin M. Cloutier (Atty No. 6273805)<br>Mikela T. Sutrina (Atty. No. 6311408)<br>Sheppard, Mullin, Richter & Hampton<br>321 N. Clark Street, 32nd Floor<br>Chicago, IL 60601<br>Phone: (312) 499-6300<br>Email: kcloutier@sheppardmullin.com<br>Email: msutrina@sheppardmullin.com | FIDEL SANCHEZ and ELECTRONIC<br>ACCESS SPECIALISTS, INC., d/b/a<br>SOUTHERN LOCK AND SUPPLY CO.,<br>Defendants<br><br>By:     */s/Kevin M. Cloutier*<br>           One of Their Attorneys |

---

[4] AKG deliberately cut off the bottom of the post showing the customer made the post in response to a solicitation by AKG's employee Aaron Jacobs. *See* **Exh. 7**, which is AKG's original Exh. C.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 17, 2023, a copy of the foregoing was filed with the Court's CM/ECF system, which will serve all counsel of record.

                                                       /s/ Kevin M. Cloutier
                                                       Kevin M. Cloutier