**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AUTOMOTIVE KEYS GROUP, LLC,        :

                               :

                    Plaintiff,   :

                               :   Case No. 1:22-cv-04930

          v.                  :

                               :

FIDEL SANCHEZ, et al.            :

                    Defendants.  :   Judge Steven C. Seeger

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
12(b)(6) MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff Automotive Keys Group, LLC ("AKG") responds the Motion to Dismiss filed by Defendants Fidel Sanchez ("Sanchez") and Electronic Access Specialists, Inc. d/b/a Southern Lock and Supply Co. ("Southern Lock") pursuant to FRCP 12(b)(6). AKG's Second Amended Complaint (Dkt. No. 61, "Second Amended Complaint" or "Second Am. Compl.") more than sufficiently alleges how Defendant Sanchez has repeatedly violated the clear obligations in his employment agreement with AKG and applicable law by breaching his fiduciary duties, becoming employed by a direct competitor, refusing to return the property and confidential information of AKG, soliciting AKG's employees and customers, disparaging AKG, misappropriating AKG's confidential information and trade secrets, and tortiously interfering with AKG's prospective advantage. AKG also more than sufficiently alleges how Defendant Southern Lock supported and participated in those breaches and violations of law in order for both Defendants to profit by establishing a "rapidly expanding automotive line" in direct competition with AKG.

Defendants' motion to dismiss AKG's claims is meritless. In a misguided attempt to dodge AKG's statutory trade secret claims in Counts II and III, Defendants ignore more than forty pages of well-pled allegations regarding AKG's business describing how the confidential information

and trade secrets developed by AKG now allow AKG to be one of the most profitable niche businesses in the automotive key industry. Defendants also ignore the inevitable disclosure of AKG's trade secrets in Sanchez's work for a direct competitor. Instead, in direct contravention of the requirements of Rule 12(b)(6), Defendants have attached to their motion irrelevant extrinsic documents with purported hyperlinks and webpage screenshots and posts, some of which are inexplicably redacted. Defendants audaciously and improperly expect the Court to wade through these numerous documents to determine their meaning and significance at the pleading stage.

Next, with respect to Count I for breach of contract against Defendant Sanchez, Defendants ask this Court to rely on inapposite case law from a court's determination at the *summary judgment* stage. Defendants unconvincingly argue that the noncompetition provision in the subject employment agreement is void for lack of consideration, despite allegations in the Second Amended Complaint that AKG met all requirements for an enforceable contract. AKG has alleged many other clear breaches of the Employment Agreement, and Southern Lock's tortious interference with the Employment Agreement by its inducement of those breaches.

Claiming that its improper extrinsic evidence somehow overcomes AKG's detailed allegations, Defendant Sanchez fails to even address AKG's claim for breach of fiduciary duty in Count IV and AKG's claim for tortious interference with prospective economic advantage in Count V, aiming instead to confuse the issues and to suggest that Counts IV and V rest entirely on allegations related to trade secrets when they do not. Finally, Defendant Southern Lock also fails to address Count V and Count VI (tortious interference with contract). Accordingly, Defendants' motion to dismiss any of AKG's claims fails and should be denied in its entirety.

## **FACTS ALLEGED**

AKG is the largest auto key supplier in North America and has, for years, made substantial

efforts and financial investment to foster its relationships with suppliers and customers. (*Id*. ¶ 5.) AKG has spent years building and implementing its confidential and proprietary pricing strategies, known in totality only by AKG and compiled by AKG, by understanding the market demand and supply for certain keys and pricing those keys accordingly. (*Id.* ¶ 5.) Each of these categories is extremely valuable to AKG, and such information was compiled over many years and at a significant cost to AKG. (*Id.*). For these reasons, Sanchez was asked to and did enter into an employment agreement with AKG on October 28, 2021 (the "Employment Agreement"). (*Id.* ¶¶ 1,10, 30-41, Exhibit ("Ex.") A.) Sanchez is required to protect the confidential information and trade secrets of AKG to which he had access and return company property. (*Id.*)  It also includes post-employment obligations that require Sanchez to refrain from: competing against AKG; soliciting customers or employees from AKG; and disparaging AKG. (*Id.*)

Sanchez had no involvement in the procurement or sale of remanufactured automotive keys until he began to work for AKG's acquired predecessor. (*Id.* ¶¶ 8, 45.) At AKG, he acted as sales representative and head of the procurement department and had intimate involvement with: AKG's customer lists; customer contact details; customer purchasing preferences and history; product costs; vendor and/or purchasing and field procurement relationships; the prices AKG pays for used keys in the marketplace; the prices at which AKG can sell certain remanufactured keys; AKG's marketing strategies; AKG's operations processes, including integration growth plans as well as AKG's brand strategies technology to transform and program keys into sellable form per customer specifications; and AKG's efforts to further develop its business. (*Id.* ¶¶ 52-53.) AKG protects this information by (i) limiting disclosure and use to employees who need the information to perform their jobs; (ii) restricting network access and requiring passwords; (iii) requiring all employees to execute confidentiality agreements; and (iv) requiring certain customer-facing employees to

3

execute non-disclosure, non-compete, and non-solicitation contracts. (*Id.* ¶ 54.) Sanchez's

Employment Agreement contains a confidentiality provision, along with non-compete and non-

solicitation provisions. (*Id.*, Ex. A ¶¶ 4, 6.)

AKG's allegations demonstrate that Sanchez has, at the behest of Southern Lock, and in

direct violation of his Employment Agreement, voluntarily resigned his employment with AKG

for a position with Southern Lock in support of Southern Lock's competing automotive key

remanufacturing business, which, after Sanchez's hire, touts on its website as "expanding." (*Id.* ¶

11.) Sanchez also downloaded confidential and proprietary information of AKG to flash drive

storage devices, which he has refused to return, and solicited the business of customers of AKG to

Southern Lock. (*Id.* ¶ 12-13.) Since leaving AKG, in concert with Southern Lock, Sanchez has

utilized, disclosed, and misappropriated AKG's trade secrets, confidential information, and

proprietary information for the benefit of himself and Southern Lock. (*Id.* ¶ 16.) Further, since

leaving AKG, and within the restricted non-solicitation period in his Employment Agreement,

Sanchez solicited John Nelson, who has recently left his employment with AKG and with whom

Sanchez worked in sales while they were both employed by AKG. (*Id.* ¶ 17.)

## LAW AND ARGUMENT

### I.      Legal Standard.

In ruling on a Rule 12(b)(6) motion, the court must take as true all well-pleaded facts in a

plaintiff's complaint and draw all reasonable inferences in the plaintiff's favor. *Dixon v. Page*, 291

F.3d 971, 977 (7th Cir. 1999). To survive a motion to dismiss, a complaint need only contain

sufficient factual matter, accepted as true, to state a claim plausible on its face. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. *See id*. When adjudicating a motion to dismiss under Rule 12(b)(6), a district court is limited to the allegations in the complaint. *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (holding that "[i]f a court takes judicial notice of a fact whose application is in dispute, the court…raises doubt as to whether the parties received a fair hearing"). A court must exclude any extrinsic documents attached to a 12(b)(6) motion to dismiss. *Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir.1998). If a court considers "matters outside the pleadings," the "motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).

Generally, a party may not attach extrinsic documents to a motion to dismiss under FRCP 12(b)(6), although a narrow exception exists where the documents are "(1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) (emphasis supplied). "[T]his is a narrow exception aimed at cases interpreting, for example, a contract. It is not intended to grant litigants license to ignore the distinction between motions to dismiss and motions for summary judgment." *Levenstein*, 164 F.3d at 347. Another limited exception allows a court to take judicial notice of matters of the public record without converting a 12(b)(6) motion to dismiss into a summary judgment motion. *Ennenga v. Starns*, 677 F.3d 766, 773-74 (7th Cir. 2012). This "narrow exception" only permits judicial notice of facts that are "not subject to reasonable dispute." *Gen. Elec.*, 128 F.3d at 1080-81 (quoting F.R.E. 201(b)). Neither exception applies here.

## II.      Defendants' Exhibits are Improper on a Motion to Dismiss under FRCP 12(b)(6).

Defendants first improperly claim that Counts II and III should fail based on extrinsic evidence which includes over 90 pages of purported Google search results and links to other webpages at Exhibits 1 through 5, which are unverified. (Dkt. 71, PageID#1214-1307). Shockingly, Defendants expect the Court to expend significant resources to visit dozens

of webpages, and somehow derive from them the legal significance with respect to whether AKG has met the pleading standard. Defendants' attached exhibits should be disregarded because they are not capable of being authenticated (and thus are subject to dispute) and not proper on consideration of a 12(b)(6) motion to dismiss.

Private webpages from varying corners of the internet will not meet the standard of being indisputable so that the Court can take judicial notice of them. *See Fooey Inc. v. Gap, Inc.,* 2013 WL 2237515, at *2, n.2 (N.D. Ill. May 17, 2013) (declining to take notice of Google search results). Defendants mischaracterize the holding in *Rowe v. Gibson* to assert erroneously that the Seventh Circuit gave *carte blanche* authorization for district courts to take judicial notice of literally any web search. The Seventh Circuit actually noted that district courts should make sparing use of judicial notice, and only when the facts from the webpage are indisputable and capable of determination as to relevance, such as the time "when it became dark on a specific night." *See Rowe v. Gibson*, 798 F.3d 622, 628 (7th Cir. 2015). Additionally, the court in *Rowe* evaluated a district court taking judicial notice in the context of a *motion for summary judgment— not* a 12(b)(6) motion to dismiss. *Id.*, at 628; *see also Daugherty v. University of Chicago,* 2017 WL 4227942, at *5 (N.D. Ill. Sept. 22, 2017) (declining to consider extrinsic exhibits where the court could not determine at such early pleading stage that the purported information was indisputable). Defendants' motion to dismiss also improperly references as Exhibit 6 a Declaration of Andrew Reisman (Dkt. No. 6) (which Defendants did not attach to their motion). AKG <u>did not</u> attach or reference this document in its Second Amended Complaint.

Alternatively, in the event the Court will not disregard the improper exhibits and references, Defendants' 12(b)(6) motion should be converted to a summary judgment motion, and AKG should be allowed to reference discovery materials in its response. Fed. R. Civ. P. 12(d).

**III.    AKG's Second Amended Complaint Meets the Pleading Standard.**

    **A.    AKG states a claim under the federal Defend Trade Secrets Act ("DTSA") and Illinois Trade Secrets Act ("ITSA") (Counts II and III).**

        **1.    Defendants place improper reliance on inapplicable case law.**

Throughout their motion, Defendants improperly rely upon the Northern District of Illinois' prior decision of *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, Case No. 1:17-cv-8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020).  The opinion in *NEXT* was a *summary judgment* decision made *after* fact discovery.  Notably, in an earlier decision from the same lawsuit, the court denied a Rule 12(b)(6) motion virtually identical to the one here, explaining "[t]he Court, without the benefit of a factual record, cannot say at this early stage in the litigation" whether the DTSA claim should be dismissed.  *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, 2018 WL 3637356, at *14 (N.D. Ill. July 31, 2018).

        **2.    AKG alleges facts plausibly showing the existence of protectable trade secrets and its efforts to maintain their secrecy.**

As a preliminary matter, the existence of a trade secret is typically a question of fact resolved by a fact finder after the full presentation of evidence from each side.  *Covenant Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 818 (N.D. Ill. 2014). Courts in this Northern District of Illinois "have found [trade secret] allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms." *Covenant Aviation*, 15 F. Supp. 3d at 818 (allowing misappropriation claim to proceed where trade secrets identified as profit and loss information, internal costs and overhead, operational information, and bid and proposal information); *Symbria, Inc. v. Callen*, 2022 WL 60530, at *11 (N.D. Ill. Jan. 6, 2022) (denying motion to dismiss where plaintiff alleged trade secrets in form of widely distributed patient-driven payment model care guide); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp.

3d 558, 573-75 (N.D. Ill. 2019) (noting plaintiff "is not required to allege its trade secrets with particularity" and denying 12(b)(6) motion to dismiss DTSA claim where trade secrets alleged as forms, accounting, rules, tax tables, and proprietary tools and data). Thus, AKG's Second Amended Complaint meets the requirements to allege the existence of trade secrets under the DTSA and ITSA.

Defendants argue that AKG has failed to establish the existence of trade secrets at all. However, for claims under both the DTSA and the ITSA, a plaintiff meets the pleading standard if it alleges the existence of a trade secret and that it was used, disclosed, or otherwise misappropriated by a defendant. *CZS Holdings LLC v. Kolbe,* No. 20-cv-6886, 2021 WL 1837385, at *3 (N.D. Ill. May 7, 2021) (denying motion to dismiss misappropriation claims); *Fire 'Em Up, Inc. v. Technocarb Equipment (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011) (declining to dismiss complaint alleging trade-secret protection for information including customer lists, supplier lists, product specifications, and marketing plans). Finally, Defendants rely on legal authority that directly contradicts their position. *See Life Spine, Inc. v. Aegis Spine, Inc.,* 8 F.4th 531, 535 (7th Cir. 2021) (affirming decision *granting* preliminary injunction after nine-day hearing resulting in finding that information *was not* in public domain); *see also Mangren Research and Dev. Corp. v. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 942 (7th Cir. 1996) (affirming verdict finding plaintiff established trade secrets *were not* in public domain). Others were not decided on a 12(b)(6) motion, but rather they involved an evaluation of the evidence. *See Abrasic 90 Inc. v. Weldcote Metals, Inc.,* 364 F. Supp. 3d 888, 895 (N.D. Ill. 2019) (decided on a motion for preliminary injunction after multi-day evidentiary hearing); *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) (applying *Wisconsin* law and granting summary judgment on Wisconsin state law misappropriation claim); *Multimedia Sales & Mktg. v. Marzullo*, 2020 IL App.

(1st) 191790, at ¶ 2 (1st Dist. 2020) (granting summary judgment after parties engaged in discovery and developed evidence); *Cortz, Inc. v. Doheny Enterprises, Inc*., 2017 WL 2958071, at \*10 (N.D. Ill. July 11, 2017) (decided on a motion for a preliminary injunction after evidentiary hearing).

The *Life Spine* decision held that "[a] trade secret can even exist 'in a combination of characteristics and components, each of which, by itself, is in the public domain,' so long as their 'unique combination' has competitive value." 8 F.4th at 540-41 (citing *3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001)). This is precisely what AKG alleges in the Second Amended Complaint: AKG customers are privy only to the prices offered to them to purchase AKG products. They have no knowledge of the compilation of information and data used to calculate these prices or what other customers in the market might be quoted for AKG products. They also have no knowledge of how AKG and Midwest Keyless developed high-level profitability models for their products and services in a very tight market. (*See* Second Am. Compl. ¶ 56.) Thus, whether AKG's customer lists, customer contact details, customer purchasing preferences and history, product costs, vendor and/or purchasing and field procurement relationships, pricing with vendors, product pricing, marketing strategies, operations processes, integration growth plans, brand strategies technology to transform and program keys into sellable form in accordance with customer specifications, and business development strategies amount to trade secrets must be left for a later stage in this litigation.   Thus, Defendants' motion to dismiss Counts II and III should be denied.

Contrary to Defendants' assertions, AKG's Second Amended Complaint also alleges in detail AKG's efforts to protect the secrecy of its trade secrets. Such efforts include access limitations, confidentiality agreements, non-disclosure agreements, and password-protected networks and devices.  (*See* Second Am. Compl., ¶¶ 4-7, 9, 42-56, 71-72, 106). Courts have held confidentiality or non-disclosure agreements *do* constitute efforts sufficient to maintain the secrecy

of a trade secret. *See Dick Corp. v. SNC-Lavalin Constructors, Inc.*, No. 04 C 1043, 2004 WL 2967556, *10 (N.D. Ill. Nov. 24, 2004). Accordingly, Defendants' motion to dismiss should be denied.

### 3. AKG has adequately alleged misappropriation of its trade secrets.

Defendants do not cite a single case in support of their argument that AKG fails to allege disclosure or use of trade secret information. Under the DTSA and ITSA, a plaintiff can plead misappropriation of a trade secret by alleging unauthorized acquisition, disclosure, or use of a trade secret. *Symbria*, 2022 WL 60530, at *12; 18 U.S.C. § 1839(5); 765 ILCS 1065/2. Here, AKG has alleged misappropriation under both statutes. For example, AKG alleges that Sanchez "accessed dozens of documents containing AKG's confidential and proprietary information" and that he "transferred many of those documents…onto his own personal flash drive storage devices." (Second Am. Compl., ¶ 71). AKG also alleges that "Sanchez and Southern Lock planned that [they] would unlawfully utilize AKG's confidential and proprietary information and trade secrets to improperly establish and accelerate the development of a new automotive lock and key business segment to compete with AKG" and that Defendants did take steps to that end. (*Id.,* ¶¶ 75-76). AKG further alleges that a forensic analysis of data on Sanchez's computer indicates that he, in an unauthorized manner, transferred AKG trade secrets to his own devices. (*Id.*, ¶ 94). AKG alleges that Sanchez and Southern Lock are in improper possession of and have improperly used AKG's trade secrets in an unauthorized manner. (*Id.,* ¶¶ 137, 140, 153-54) Allegations such as these are sufficient to state a claim for misappropriation of trade secrets. *See Cognis Corp. v. CHEMCENTRAL Corp.*, 430 F. Supp. 2d 806, 811-12 (N.D. Ill. 2006) (denying motion to dismiss where plaintiff alleged defendant used trade secrets without consent). Additionally, courts recognize the inevitable disclosure doctrine to establish a cognizable claim of trade secret

misappropriation. Here, AKG's allegations that it is competitive with Southern Lock, that Sanchez's position with Southern Lock is comparable to the position he held while at AKG, and that Sanchez and Southern Lock are using AKG's trade secrets to support Southern Lock's "rapidly expanding automotive line," acts to "trigger the circumstantial inference that the trade secrets inevitably would be disclosed by [former employee] to [former employee's new employer]." *Molon Motor & Coil Corp. v. Nidec Motor Corp.*, Case No. 16 C 03545, 2017 WL 1954531, at *7 (N.D. Ill. May 11, 2017).

**B.      AKG States a Claim for Breach of Contract (Count I) and Tortious Interference with Contract (Count VI).**

**1.      AKG properly alleges breach of the non-compete provision.**

AKG alleges that Sanchez breached the non-compete (Second. Am. Compl, ¶ 115), which Defendants do not dispute. Defendants, however, erroneously contend that the non-compete claim should be dismissed due to lack of consideration or enforceability. Defendants are wrong. Other than citing Illinois law for the general principle that restrictive covenants must be supported by adequate consideration, Defendants' motion contains *no* legal authority for their contention regarding the alleged cash consideration payment here.  Courts in this District have explained that, if the period of continued employment is less than two years, sufficient consideration for restrictive covenants can be alleged by other means. *See Guaranteed Rate, Inc. v. Wilson*, No. 20-cv-1663, 2020 WL 4736395, at *3 (N.D. Ill. Aug. 14, 2020) (finding it premature to rule on the issue of adequate consideration on a Rule 12(b)(6) motion where consideration is properly alleged); *see also Stericycle, Inc. v. Simota*, No. 16 C 4782, 2017 WL 4742197, at *5 (N.D. Ill. Oct. 20, 2017) (holding plaintiff sufficiently alleged adequate consideration by alleging 13 months of employment and unvested stock options).

Here, AKG has properly alleged consideration in exchange for Sanchez's assent to the restrictive covenants. In addition to roughly nine months of continued employment after the execution of the Employment Agreement until Sanchez's resignation, Sanchez also received additional, separate consideration in the form of a monetary payment. Thus, AKG has properly alleged the non-compete to be enforceable. Likewise, Defendant Southern Lock's sole basis for arguing for the dismissal of Count VI also fails.

Defendants also erroneously contend that AKG has failed to plead a protectible interest, and that the terms of the agreement are overbroad. On the contrary, AKG has alleged in detail that the Employment Agreement's restrictive covenants are valid and enforceable under Illinois law because they are necessary to protect a legitimate business interest—that is, AKG's confidential information and trade secrets that give it a competitive advantage in the market. In any event, whether a restrictive covenant is reasonable is a fact-based determination that is not appropriate at the motion to dismiss stage. *Maximum Indep. Brokerage, LLC v. Smith*, 218 F. Supp. 3d 630, 637 (N.D. Ill. 2016) (denying former employees' 12(b)(6) motion to dismiss and holding that non-solicitation clause in employment agreement that had no geographic limitation and contained two-year restriction was not patently unreasonable). The mere fact that AKG has alleged that it has a legitimate business interest is, alone, sufficient to deny Defendants' request for dismissal. *See Nortek Prod. (Taicang) Ltd. v. FNA Grp., Inc.*, No. 10 C 2813, 2011 WL 2110043, at *4 (N.D. Ill. May 24, 2011) (finding that [the employer] has alleged a legitimate business interest that serves as a valid basis for stating a claim for breach of the restrictive covenants.").

> **2.      AKG alleges breach of the confidentiality and failure to return property provisions**.

Defendants next argue that AKG has failed to allege a breach of the confidentiality provision of the Employment Agreement because the information at issue in this matter is not, in

fact, "Confidential Information" under the terms of the Employment Agreement. Notably, Defendants do not cite any legal authority in support of their argument that AKG has failed to allege a breach of the confidentiality provision of the Employment Agreement.

AKG alleges that Sanchez breached Paragraph 4 of the Employment Agreement by using AKG's confidential information and trade secrets for the benefit of himself and Southern Lock. (Second Am. Compl. ¶¶ 71, 72, 75, 76, 94-96, 100, 119). Accordingly, AKG's allegations in this regard are more than sufficient to state a breach of contract claim. *See Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1107 (N.D. Ill. 2016) (holding enforceable confidentiality agreement that broadly defined confidential information and enumerated examples of confidential information). Even if there is an ambiguity (which there is not), "interpreting the contract's meaning is a question of fact" rendering dismissal inappropriate. *See LeSaint Logistics, LLC v. Electra Bicycle Company, LLC,* 146 F. Supp. 3d 972, 977 (N.D. Ill. 2015) (denying motion to dismiss based upon alleged contractual ambiguity due to necessary question of fact). Defendants fail put forth any argument regarding AKG's claim that Sanchez failed to return its property.

**3.      AKG alleges breaches of the non-solicitation and non-disparagement provisions.**

Despite Defendants' contentions, AKG has adequately alleged claims for breaches of the Employment Agreement's non-solicitation and non-disparagement provisions. Defendants only assert in a conclusory manner that the Second Amended Complaint is "devoid of any colorable facts suggesting Sanchez actually breached the Agreement" and that "[t]here are no facts that Sanchez solicited any AKG employee or 'disparaged' AKG." Again, Defendants cite no legal authority to support their argument, other than a vague reference in passing to *Iqbal* and *Twombly*. Defendants' argument here appears to misstate the law. At this stage of litigation, AKG is not required to produce evidence for or prove such claims. *See Nortridge v. Columbia Health*

*Facilities-Park Regency, LLC*, No. 19 C 50253, 2020 WL 1904092, at *2 (N.D. Ill. Apr. 18, 2020) (". . . at the motion to dismiss stage, [plaintiff] is not required to prove anything."); *Carlson v CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("[E]vidence is not required at the pleading stage."). The allegations contained in AKG's Second Amended Complaint are more than sufficient to put Defendants on notice of AKG's claims relating to the fact that Sanchez has disparaged AKG, solicited AKG customers and at least one AKG employee, John Nelson, all in violation of the terms of his Employment Agreement. (Second Am. Compl., ¶¶ 2, 12, 15, 17-19, 78-79, 102-104, 123, 124, 125.) Thus, Defendants' motion to dismiss Count I should be denied.

**4.      AKG has properly alleged that Southern Lock tortiously interfered with the Employment Agreement in Count VI.**

AKG has alleged that Southern Lock tortiously interfered with the Employment Agreement by unlawfully inducing Sanchez's breaches. A plaintiff states a claim for tortious interference with contract if it alleges the existence of a contract; the defendant's awareness of it; and the defendant's intentional and unjustified inducement of a breach of the contract. *20/20 Foresight, Inc. v. George*, No 20-cv-5310, 2021 WL 2823095, at *4 (N.D. Ill. July 7, 2021). Here, AKG alleges that Southern Lock, being aware of the Employment Agreement and Sanchez's obligations therein, intentionally induced Sanchez to breach his contractual obligations to the detriment of AKG. (Second Am. Compl., at ¶¶ 177-186). Thus, Count VI states a claim .

**C.      AKG Sufficiently Alleges its Claims in Counts IV and V.**

Without citing any legal authority to support such a contention, Defendants argue that "pleading deficiencies in [the trade secrets claims] extend to Count IV (breach of fiduciary duty…) and Count V (tortious interference with prospective advantage)..." (Dkt. No. 71, PageID#1208). As discussed above, AKG has adequately alleged claims under both the DTSA and the ITSA. Defendants, however, aim to confuse the issues and flatly misstate AKG's allegations and Illinois

14

law. For breach of fiduciary duty, a plaintiff must allege a fiduciary duty and a breach of that duty. *See Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶ 144. To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege: "(1) plaintiff's reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of that expectancy; and (3) defendant's intentional and unjustifiable interference with the expectancy." *20/20 Foresight*, 2021 WL 2823095, at *4. AKG properly alleges multiple breaches of Sanchez's fiduciary duties and how Defendants interfered with AKG's prospective advantage. Defendants two inapposite cases do not change this result because neither addressed claims for breach of fiduciary duty or tortious interference. *See Packaging Corp. of Am., Inc. v. Croner,* 419 F. Supp. 3d 1059 (N.D. Ill. 2020); *Abbott Lab. v. Chiron Corp.*, No 97 C 0519, 1997 WL 208369 (N.D. Ill. Apr. 23, 1997). Accordingly, Defendants' motion to dismiss should be denied.

## **CONCLUSION**

This Court should deny Defendants' motion to dismiss; or should this Court consider Defendants' extrinsic evidence, AKG respectfully requests that the Court the motion to dismiss to a motion for summary judgment and allow discovery in response.

Dated: May 18, 2023                          Respectfully submitted,

*/s/ Margo Wolf O'Donnell*
Margo Wolf O'Donnell (6225758)
Emily Newhouse Dillingham (6290333)
Jordan J. Call (6340589)
**BENESCH, FRIEDLANDER, COPLAN
  & ARONOFF LLP**
71 S. Wacker Drive, Suite 1600
Chicago, Illinois 60606-2211
Telephone: 312.212.4982
Facsimile: 312.767.9192

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, does hereby certify that they caused a true and correct copy of the foregoing Response to Defendants Motion to Dismiss Second Amended Complaint to be served upon all parties by this Court's ECF system, this 18th day of May 2023.


*/s/ Margo Wolf O'Donnell*